IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KYLE FICKEL, </br></br> Plaintiff, </br></br> vs. </br></br> CLEARWATER CREDIT UNION f/k/a MISSOULA FEDERAL CREDIT UNION, et al, </br></br> Defendants. | ) </br> ) </br> ) </br> ) </br> )   Case No. 21-CV-798-SMY </br> ) </br> ) </br> ) </br> ) </br> ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Kyle Fickel filed the instant lawsuit against Defendant Clearwater Credit Union, formerly known as Missoula Federal Credit Union ("Clearwater"), alleging that Clearwater violated the Fair Credit Reporting Act ("FCRA") by failing to properly report his debt to consumer reporting agencies or to investigate his dispute of it (Doc. 78).

This case is now before the Court for consideration of Clearwater's motion for summary judgment (Doc. 85). Fickel responded in opposition to the motion (Doc. 93). For the following reasons, Clearwater's motion will be denied in its entirety.

## Factual Background

The following material facts are undisputed unless otherwise noted: while working in the Montana oil fields, Fickel banked with Clearwater (Doc. 94-4 at 12:9-14:2-22). He obtained a credit card from Clearwater but fell behind on his payments sometime in 2017 (Doc. 84-1 at 89:1-12). On or about November 2, 2017, Clearwater sent Fickel's delinquent account to a third-party collection agency, LPH, Inc. doing business as Northwest Collectors ("Northwest") (Doc. 94-3, p. 6). Fickel obtained a copy of his credit report from the major credit reporting agencies and noticed

that his Clearwater credit card debt was being listed twice (Doc. 94-3). In the first listing, Clearwater reported the debt as an "individual" and "revolving" account that was in collections and for which Fickel he owed $10,145 (Doc. 94-3, p. 3). In the second listing, Northwest reported the debt as an "open" collections account with a balance over $12,000, with the original creditor as Clearwater and the original balance as $10,065 (Doc. 94-3, p. 6).

On January 30, 2020, Fickel sent identical dispute letters to the three major credit reporting agencies – Transunion, LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc. (Doc. 94-5). The dispute letter includes Fickel's identifying information, acknowledges that he had a delinquent Clearwater account, and indicates confusion as to why that account appears to be listed twice:

> I have an account with Clearwater Credit Union with [account number] that I fell behind on. I notice they are reporting the debt on my credit report while Northwest Collectors [separate account number] is also reporting what I think is the same debt but for a different amount.
>
> Who do I owe money to? I'm confused. . . . Why are both accounts reporting on my credit report? Are there interest or collection fees that I'm not aware of? I've been trying to repair my credit, this has me puzzled.

(Doc. 94-5, p. 2)

Fickel submitted additional similar disputes, including one while this litigation was pending. As a result of the alleged inaccuracy of his credit reports, Fickel had difficulties obtaining a mortgage, was denied an apartment by a landlord, and developed a generalized anxiety disorder that required him to take medication (Doc. 94-4 at 19:11-20:4; 30:9-31:12; 32:1-14).

During discovery, Clearwater produced two corporate witnesses to testify regarding its handling of Fickel's dispute letters. Elizabeth Ann Philips worked in consumer credit disputes for Clearwater during the relevant period (Doc. 84-1). She testified that Clearwater uses a system called e-OSCAR that allows her to see disputes that have been sent from the credit reporting

agencies on behalf of customers (Doc. 84-1 at 46:7-22). These disputes are called Automated Consumer Dispute Verification Form, or ACDVs. (*Id.* at 58:1-18). Fickel's dispute resulted in an ACDV to Clearwater that included a consumer message, "Duplicate" (Doc. 84-4). Philips reviewed Fickel's ACDV and verified his personal identifying information, the balance, and the account status before reporting it as accurate to the credit bureaus (*Id.* at 83:11-84:18). This is the standard procedure for such disputes… "making sure that what the bureaus are reporting matches with what is contained within [the internal system]." (*Id.* at 55:2-5).

Clearwater also produced Hollie Zeier, who was Philips' supervisor (Doc. 84-2 at 25:4-5). According to Zeier, Clearwater understood that Fickel was "alleging inaccuracies because what he alleged to be duplicate reporting" but nevertheless focused its investigation on simply verifying that the information in the credit report matched the information in their internal system. (*Id.* at 85:15-22; 89:2-7.) Zeier testified that, as far as she knows, Clearwater did not conduct any specific legal analysis of whether the reporting of Fickel's debt was proper, aside from reviewing the FCRA. (*Id.* at 89:8-90:11).

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – when the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Congress enacted the FCRA to protect consumers by ensuring "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). Entities that report consumer information to credit reporting agencies ("CRAs") are called "furnishers" of information. 15 U.S.C. §§ 1681a, 1681s-2. Section 1681s-2(a) of the FCRA prohibits furnishers from reporting information about consumers to CRAs that the furnisher reasonably believes is incomplete or inaccurate. *See* 15 U.S.C. § 1681s-2(a). And Section 1681s-2(b) provides a cause of action where a furnisher fails to properly investigate a dispute over whether information it has provided is incomplete or inaccurate. *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005).

To prevail on his claim for a violation of Section 1681s-2(b), Fickel must show that (1) he disputed an inaccuracy by notifying a CRA, (2) the CRA contacted the furnisher to alert it to the dispute, and (3) the furnisher failed to adequately investigate and correct the allegedly inaccurate information in question. *Westra,* 409 F.3d at 827. "Inaccurate" information, under the FCRA, includes both factually incorrect information and information that creates a misleading impression. *See Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1004 (N.D. Ill. 2009) (discussing the interpretation of the statutory language of "incomplete" or "inaccurate" in the FCRA).

While the Seventh Circuit Court of Appeals has not decided whether double-reporting of a single debt on a credit report is an FCRA violation, district courts across the country have found that whether the practice is misleading and violates the FCRA is an issue of fact. *See Akalwadi v. Risk Mgmt. Alternatives, Inc.,* 336 F. Supp. 2d 492, 503 (D. Md. 2004) (denying summary judgment for debt collector who double-reported for same debt from two different office locations under two separate account numbers); *see also Cook v. Mountain Am. Fed. Credit Union,* 2018 WL 3707922, at *4 (D. Ariz. 2018) (noting that "it is plausible that the double reporting of plaintiff's debt would mislead and adversely affect credit decisions"). This Court finds these

decisions to be well-reasoned and persuasive. An issue of fact exists as to whether the double reporting of Fickel's debt with Clearwater left a misleading impression that he had two separate debts, totaling $22,000 instead of a single debt of approximately $10,000.

Moreover, "[w]hether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra,* 409 F.3d at 827. Here, Clearwater responded to the consumer dispute form by comparing the information being reported by the CRAs with the information in its internal system before verifying that it was accurate. Although Fickel's ACDV contained the message "Duplicate" and Clearwater's corporate representative acknowledged that Fickel had written about the "duplicate" reporting, Clearwater did not address this issue or request an alteration to the credit report. *See* 15 U.S.C. § 1681s-2(b). A jury could reasonably conclude find that Clearwater's investigation was inadequate under the FCRA. And whether Clearwater's investigation or protocol may qualify as a willful violation giving rise to statutory or punitive damages is an issue for a jury as well. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (requiring a demonstration that Clearwater ran a risk of violating the law "substantially greater than the risk associated with a reading [of the FCRA] that was merely careless").

Finally, evidence that Fickel developed an anxiety disorder as a result of being denied credit is sufficient evidence of actual damages under the FCRA. *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021) (requiring actual damages to prove a negligent violation of the FCRA). Although Clearwater argues that Fickel failed to prove that his credit report had been disclosed to third-parties, he specifically testified that a loan officer reviewed his credit report with him, noted the duplicate reporting, and then refused him for a mortgage. (Doc. 94-4 at 19:11-20:4.)

## Conclusion

For the foregoing reasons, Defendant Clearwater's Motion for Summary Judgment (Doc. 85) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: March 10, 2023**

**STACI M. YANDLE**
**United States District Judge**